HAWTHORNE *v.* STATE.

Opinion delivered July 8, 1918.

1. EVIDENCE—CRIMINAL LAW—PROOF OF ALIBI.—An instruction held proper which told the jury that where the defendant sought to prove an alibi, the burden was upon him to do so, but "that this burden is discharged if the proof raises a reasonable doubt in your mind as to whether he was at the place where the crime was committed or at some other place, because if he was not there he could not be guilty. * * * If the proof raises a reasonable doubt as to whether he was there, that raises a reasonable doubt of his guilt."

2. CRIMINAL LAW—RAPE—PENALTY—INSTRUCTION.—In a prosecution for rape, it is proper for the trial court to tell the jury that if they found the defendant guilty, and in their verdict said nothing about punishment, that the court would have to fix the punishment at death; but that the jury might fix the punishment at death or life imprisonment.

3. EVIDENCE—NEW TRIAL—NEWLY DISCOVERED EVIDENCE.—In a prosecution for rape, defendant was convicted, but sought a new trial on the ground of newly discovered evidence to the effect that a certain street car conductor would testify that he was on a certain street car near the time of the alleged commission of the crime. *Held*, the motion was properly overruled upon the ground that the testimony was merely cumulative of other testimony, and also that if defendant was upon the car, as alleged, he should have called the conductor to testify in the first instance.

Appeal from Pulaski Circuit Court; *Jno. W. Wade*, Judge; affirmed.

*John D. Shackelford,* for appellant.

1. The evidence is conflicting and very unsatisfactory. There is no positive testimony against defendant except the girl's. The jury did not believe him guilty or they would have found the death penalty. The proof of identity is very uncertain—the girl was mistaken. The evidence fails to identify defendant as the criminal. The description is conflicting and uncertain.

2. An alibi was proven.

3. A new trial should have been granted for newly discovered evidence.

4. The court erred in instructions 13 and 20. They were prejudicial.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellee.

1. The evidence is ample to support the verdict.

2. A new trial is not warranted because of newly discovered evidence. It is cumulative merely and due diligence was not shown. 17 Ark. 404; 15 *Id.* 395; 66 *Id.* 523; 100 *Id.* 203; 99 *Id.* 407; 96 *Id.* 400; 45 *Id.* 328; 40 *Id.* 445; 97 *Id.* 92; 111 *Id.* 640; 39 *Id.* 221; 55 *Id.* 323; 72 *Id.* 404, 37 *Id.* 91; 38 *Id.* 514; 85 *Id.* 179; *Ib* 333; 104 *Id.* 212; 13 *Id.* 360.

3. There was no error in giving instruction No. 13, 59 Ark. 379. 102 *Id.* 627.

4. There was no error in giving No. 20. Acts 1915, Act 187; 133 Ark. 261.

SMITH, J. Appellant prosecutes this appeal to reverse a judgment of the trial court sentencing him to life imprisonment for the crime of rape, alleged to have been committed upon the person of Carl Bowman, a seventeen year old girl, on the night of February 11, 1918. Miss Bowman had gone on an automobile ride on the West 12th street pike out of the city of Little Rock with Gladys Terhune, her companion, a girl of her own age, and two young men about grown. After driving several miles out of town they turned around to return, when a report was heard, which the occupants of the car mistook

to be a blowout of a tire, and they stopped to examine the tire and while so engaged a young negro man approached the car with a pistol in his left hand and who, when asked if he wanted money or jewelry, answered that he did not; that he wanted the girl on the rear seat who was Miss Bowman. The negro stepped on the running board of the car, seized hold of Miss Bowman's hand and dragged her from the car. She testified that either or both of her male companions could have seized the negro and that either was larger than the negro, but that they, were too cowardly to do anything in her defense, and she was compelled to leave the car and was taken a short distance from the road and ravished. The other occupants of the car left Miss Bowman to her fate and drove rapidly to the city, where they gave the alarm, and then returned to the scene of the crime with the officers who had been notified of its commission. Miss Bowman and the other occupants of the car positively identified appellant as the guilty man, although he proved to be a smaller man than they in their fright had taken him to be. One or more of the occupants of the car had the impression that Miss Bowman's assailant was cross-eyed or had some defects in his eyes which made them peculiar; but in this they were also mistaken. Notwithstanding this discrepancy the witnesses were positive in their identification, and there can be no question about the legal sufficiency of the testimony to support the verdict.

Appellant denied his guilt and undertook to prove an alibi. His theory of the case is that Jack Padgett, one of the occupants of the car and the man who drove it, had carried the young ladies out the pike pursuant to an understanding to that effect between him and Miss Bowman's assailant; but no substantial testimony was offered in support of that theory.

The court gave an elaborate charge which fully and fairly covered all the issues presented by the testimony.

(1) It is insisted by appellant, however, that instruction numbered 13, which dealt with the defense of an alibi, was erroneous, in that it told the jury that the

burden of proof on this issue was upon the appellant. It is true the instruction so stated; but it also stated "that this burden is discharged if the proof raises a reasonable doubt in your mind as to whether he was at the place where the crime was committed or at some other place, because if he was not there he could not be guilty." The instruction also stated that "if the proof raises a reasonable doubt as to whether he was there, that raises a reasonable doubt of his guilt." The instruction as given was a correct declaration of the law. *Ware* v. *State,* 59 Ark. 379; *Wells* v. *State,* 102 Ark. 627.

(2) Exception was saved to the action of the court in giving to the jury an instruction numbered 20, which reads as follows: "Gentlemen of the Jury: If you go out and say 'We, the jury, find the defendant guilty of rape as charged in the indictment,' and do not say anything about the punishment, the court will have to fix his punishment at death. I submit to you that in the event you find him guilty you will realize that under the law you have the right to fix his punishment yourself at death, or life imprisonment; but unless you do that it is the duty of the court to fix it at death."

The basis of the objection to this instruction appears to be that it was given under circumstances which might have caused the jury to attach special significance to it. It is recited in the record that after the first nineteen instructions had been given to the jury the "court and counsel for the State and the defendant retired to the judge's chambers, and upon their return to the court room, the judge resumed the bench and gave the instruction set out above." We think the objection made is not tenable. It is true that the instruction numbered 19, which had already been given, told the jury that if they found the defendant guilty they might fix his punishment at death or at life imprisonment in the State penitentiary; but they had not been instructed, prior to the giving of instruction numbered 20, as to the effect of a verdict merely finding the defendant guilty as charged in the indictment. In giving this instruction numbered 20

the court evidently had in mind the opinion of this court in the case of *Kelley* v. *State,* 133 Ark. 261. The opinion in that case was handed down just a short time before appellant's trial in the court below, and we there construed section 1 of Act No. 187, of the Acts of 1915, page 774. In the Kelley case, *supra,* the jury had found the defendant guilty of murder in the first degree as charged in the indictment but had not fixed the punishment to be imposed, and it became necessary to construe the act of 1915 to determine the correctness of the action of the trial court in that case in imposing the death sentence upon the rendition of that verdict. The language of the Act of 1915 is set out in that opinion and reads as follows: "That the jury shall have the right in all cases where the punishment is now death by law, to render a verdict of life imprisonment in the State penitentiary at hard labor."

In construing that statute we said that it was the legislative intent to extend a privilege or right to the jury to impose a lighter punishment than death; but that in the event this clemency was not extended by the jury the punishment fixed by law would follow the verdict, and that, therefore, the death sentence was the proper one to be imposed in that case. The trial judge no doubt had in mind that the jury here might return a verdict similar to the one returned in the Kelley case, in which event it would become his duty to impose the death sentence, and the court accordingly told the jury that the punishment would be death unless the jury fixed the punishment at life imprisonment. We think the instruction was clearly given in the interest of the appellant and was prompted by the humane impulse of the trial judge to give the jury an opportunity to save appellant's life if they so desired, and the verdict returned would indicate that the instruction given might have been instrumental in accomplishing that result.

(3) It is finally insisted that error was committed by the trial court in refusing to grant appellant a new trial upon the ground of newly discovered evidence. But

in opposition to this contention it is insisted on behalf of the State that the testimony is cumulative of other testimony in the case, and that a lack of diligence was shown by appellant in discovering this testimony prior to his trial. The most important of this testimony was that of a street car conductor, and it is illustrative of the other testimony referred to in the motion. It is pointed out in the brief of the State that there are certain inconsistencies in the recital of the statement of what the testimony of this witness would have been which would have caused the jury to wholly disregard it had it been heard at the trial. So far as that contention is concerned, however, it may be said that the witness at the trial might have explained these apparent contradictions, and we do not, therefore, base our decision of this question on that ground. The testimony of this conductor would have tended to show that appellant was a passenger on a Highland car at a time when it would have been very difficult, if not impossible, for him to have thereafter been at the scene of the crime at the time of its commission. But, as has been said, this testimony was cumulative to much other testimony on the alibi. Moreover, defendant knew that he was a passenger on the street car, if such was the case, and he should, therefore, before his trial, have inquired of the conductor what knowledge he had concerning the case. *Russell* v. *State,* 97 Ark. 92; *Adams* v. *State,* 100 Ark. 203; *Young* v. *State,* 99 Ark. 407; *Osborne* v. *State,* 96 Ark. 400. Judgment affirmed.